**Ellis MANESS, Appellee,**

v.

**Roy L. WILLIAMS and Herman A. Lueking, Jr., as Trustees of the Central States, Southeast and Southwest Areas Pension Fund, Appellants.**

No. 74–1331.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1974.

Decided April 8, 1975.

Alan M. Levy, Goldberg, Previant & Uelmen, Milwaukee, Wis., for appellant.

Burton H. Shostak, St. Louis, Mo., for appellee.

Before GIBSON, Chief Judge, CLARK,* Associate Justice, Retired, and WEBSTER, Circuit Judge.

WEBSTER, Circuit Judge.

This case presents for our review the denial of pension benefits to Ellis G. Maness by the trustees of the Central States, Southeast and Southwest Areas

* Associate Justice Tom C. Clark, United States Supreme Court, Retired, sitting by designation.

Pension Fund. Following a trial to the court on stipulated facts, Judge Meredith[1] determined that the trustees had acted arbitrarily and capriciously and ordered them to pay the benefits. The critical issue before us in this appeal is whether Maness had the required creditable service in the Teamster industry, for without such service it is conceded that he would not qualify for the pension in question.

█ In resolving this issue, we note initially that judicial review in cases such as this is limited. It is well established that a reviewing court will intervene in the administration of a pension plan only where the trustees have acted arbitrarily, capriciously or in bad faith. Hayes v. Morse, 347 F.Supp. 1081, 1086 (E.D.Mo.1972), aff'd, 474 F.2d 1265 (8th Cir. 1973); Ruth v. Lewis, 166 F.Supp. 346, 349 (D.D.C.1958); *see* Brune v. Morse, 475 F.2d 858 (8th Cir. 1973).

## I.

We summarize the relevant stipulated facts. Maness was born March 1, 1906. From 1943 until 1946 or 1947 he worked in the shipping department of an A. S. Aloe Company plant in St. Louis. He was classified as an employee, not a supervisor. His duties included both paperwork and manual labor. Although a labor contract covered the employees working at that location, Maness was not subject to that agreement. In approximately 1947, Maness moved to a different Aloe facility where the character of his work remained unchanged but he was given a helper. Employees at this second facility were covered by a collective bargaining agreement between Teamsters Local 688 and the employer; Maness, however, was not covered by this agreement and neither received benefits thereunder nor joined the union. As a result, Maness was required to purchase work permits from the union which allowed him to perform manual labor covered by the collective bargaining agreement.

In 1948 or 1949, the company terminated Maness' hourly wages and began paying him a monthly salary. His manual labor duties ceased,[2] and his new responsibilities included paperwork (as before) plus watching over the packing department and training new employees.[3] In his new capacity he participated in an insurance plan and retirement fund for non-bargaining unit employees. In 1963, the company moved Maness to still another facility, where his work remained unchanged.

Judge Meredith's findings of fact detail the subsequent history of the controversy: On October 30, 1963, in an effort to resolve a dispute that had arisen concerning Maness' work, the union (Local 688 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America) and the employer entered into a settlement, whereby the company agreed to include the job performed by Maness in the bargaining unit. The settlement further provided that Maness could continue performing such work if he joined the union within 30 days, and that "[i]f Mr. Maness so decides, then he shall be credited with full seniority rights since employed by the Company and shall. enjoy all rights and benefits in accordance with his seniority." Maness did join the union within the allotted 30 days.

From December of 1963 to 1969, Maness continued to work at the same Aloe facility. The character of his work was essentially the same as it had been since approximately 1949. During this period (1963–1969), the company paid pension contributions on behalf of Maness to the Pension Fund in question for a total of 261 weeks.

---

1. James H. Meredith, Chief United States District Judge for the Eastern District of Missouri. The jurisdiction of the District Court was based on 29 U.S.C. § 185.

2. Thus, he was no longer required to purchase work permits.

3. Maness did not receive overtime compensation for extra hours worked in this new capacity, nor did he have authority to hire, fire or discipline employees.

On January 9, 1969, Maness filed an application for benefits under the Central States, Southeast and Southwest Areas Pension Plan. Following the trustees' rejection of the application and Maness' exhaustion of his administrative remedies, he initiated the action from which this appeal arises.

## II.

Under Article III, Section 1 of the Plan, "[a]n employee who has reached the NORMAL RETIREMENT DATE shall be eligible for the retirement benefit provided by this Pension Plan." Article I, Section 15 of the Plan provides in part:

> *Normal Retirement Date* for an employee who became a member of the Plan prior to July 1, 1967 shall mean the date the employee attains his fifty-seventh birthday, or the date the employee completes twenty years of continuous service in the industry, or the date the employee completes three years of continuous service under a collective bargaining agreement, or the date on which eighty weeks contributions have been paid to the Pension Fund on behalf of the employee by the employer, whichever last occurs.[4]

There is no question under the stipulated facts that, at the time Maness filed his application for pension benefits, he was 62 years old, he had completed over five years of continuous service under a collective bargaining agreement[5] and his employer had paid 261 weeks of contributions to the Pension Fund on his behalf. Thus, the only point in dispute is whether Maness had satisfied the provi-

---

4. The phrase "whichever last occurs" thus makes each condition, although stated in the disjunctive, a requirement for retirement eligibility.

5. Under Article I, Section 14B of the Pension Plan:

> *Continuous Service as an Employee under a Collective Bargaining Agreement* shall mean accumulated years of employment prior to retirement calculated from the employee's last employment or re-employment date following the last break in service and excluding years of service not covered under a collective bargaining agreement.

sion requiring 20 years of continuous service in the industry.

Article I, Section 14 of the Plan defines "continuous service in the industry as an employee" in relevant part as

> accumulated years of employment prior to retirement calculated from the employee's last employment or re-employment date following the last break in service.

In light of these provisions of the Pension Plan, the parties have focused their controversy upon the settlement agreement of October 30, 1963, between the employer and the union. Maness argues, as he did below, that this agreement to credit him "with full seniority rights since employed by the Company" operated to give him retroactive membership in the bargaining unit and that as a result thereof he had attained the required 20 years of service in the Teamster industry. The trustees disagree. It has been their position that Maness' employment between approximately 1949 and 1963 involved supervisory duties and hence he was not in covered employee status during this period.[6] Thus they contend that this interval constituted a "break in service"[7] which precluded Maness from fulfilling the eligibility requirement of the Plan. In support of this conclusion, appellant-trustees emphasize that from approximately 1949 to 1963 Maness participated in an insurance plan and retirement fund for non-bargaining unit employees and that, during the period prior to the 1963 agreement, the employer made no contributions to Central States, Southeast and Southwest Areas Pension Fund on Maness' behalf.

> It is undisputed that Maness' work following the 1963 agreement between the employer and the union was covered by the collective bargaining agreement.

6. "Employee," as defined in the Plan, expressly excludes "a person employed in a supervisory capacity."

7. Article I, Section 13 of the Plan provides in part:

> *A Break in Service,* within the meaning of the Plan, shall occur if an employee is not in covered employment for a period of five consecutive years between February 1, 1955 and April 1, 1969 or for a period of three consecutive years after April 1, 1969.

 In our view, acceptance of the trustees' contention would result in imposing a standard not required by the Pension Plan itself. The Plan requires "twenty years of continuous service in the industry" and "three years of continuous service under a collective bargaining agreement." The periods are separately set forth and both are required in computing the normal retirement date. The three-year requirement would be superfluous if the twenty-year requirement meant service under a collective bargaining agreement.

 It is true, as appellant-trustees have asserted, that the eligibility determination is lodged with the trustees and that a union and an employer cannot between themselves create eligibility. It is also true, however, under the facts stipulated by both parties, that Maness did become a member of the bargaining unit at the time of the 1963 agreement. Clearly, he was working "in the industry" at least from that time forward. Since Maness' duties from 1963 to 1969 were approximately the same as the duties he had performed from 1949 to 1963, we must conclude, as did the District Court, that Maness did not perform supervisory work [8] and that his work was "in the teamsters' industry" during both periods.[9] These are findings of fact, *see* N.L.R.B. v. Griggs Equipment, Inc., 307 F.2d 275, 279 (5th Cir. 1962), which we accept as not clearly erroneous. Fed.R. Civ.P. 52(a). Requiring that such continuous service in the industry also be within a specific bargaining unit, as the trustees contend, would result in an unwarranted and arbitrary construction of the Plan.

Accordingly, we uphold Judge Meredith's determination that the trustees acted arbitrarily and capriciously and we affirm his order that the benefits, plus interest, be paid.

**8.** The term "supervisor" is defined by statute:

The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

29 U.S.C. § 152(11).

**9.** This case is significantly different from the circumstances depicted in Brune v. Morse, 475 F.2d 858 (8th Cir. 1973), wherein the pension applicant had worked for many years as a shoe laster, a job not normally covered by Teamster agreements, before becoming a warehouseman in another company—work which was clearly in the Teamster industry. Phillips v. Unity Welfare Association, Inc., 359 F.Supp. 1147 (E.D.Mo.1973), is likewise distinguishable, for the dispute there centered again on work not traditionally in the Teamsters' craft. Further, we are aware of no long-standing interpretation of the Plan and related documents to the effect that Maness' work lay outside the traditional Teamster crafts. Cf. Miracle v. United Mine Workers of America, Welfare and Retirement Fund of 1950, 373 F.Supp. 603 (D.D.C.1974).