Mrs. Geneva B. PHILLIPS, Appellee,

v.

William J. KENNEDY et al., Appellants.

No. 75–1903.

United States Court of Appeals,
Eighth Circuit.

Submitted May 13, 1976.
Decided Sept. 15, 1976.

Alan M. Levy, Milwaukee, Wis., for appellants; James G. Walsh, Jr., Gant, Jolley, Moran, Walsh, Hager & Gordon, Kansas City, Mo., on briefs.

Robert B. Thomson, Linde, Thomson, Fairchild, Langworthy & Kohn, Kansas City, Mo., for appellee.

Before HEANEY and HENLEY, Circuit Judges, and SCHATZ, District Judge.*

* ALBERT G. SCHATZ, District Judge, District of Nebraska, sitting by designation.

HEANEY, Circuit Judge.

This is an appeal from the grant of summary judgment in favor of Mrs. Geneva Phillips. The District Court, *Phillips v. Kennedy,* Civil No. 51–1250 (W.D.Mo., August 20, 1975), declared her entitled to receive a survivor's pension benefit under the Central States, Southeast and Southwest Areas Pension Plan on the basis of her husband's service under the Plan. We affirm.

Ansel F. Phillips, the deceased husband of the appellee, was initially employed in the teamster industry [1] in 1934 and remained so employed until his death. With the exception of two years service in the Marine Corps, he worked as a truck driver for Boyd Truck Lines from 1934 until 1955. From 1955 until 1958, he worked as a mechanic for Knaus Truck Lines. From 1958 until 1960, he worked as a mechanic for Consolidated Freightways. From 1960 until his death on October 20, 1971, he was employed by Tri-State Motor Transit Company.

In order for Mrs. Phillips to be eligible to receive benefits under the Plan as a surviving spouse, the conditions set forth below must be satisfied. Regardless of whether the employee died prior to or after his normal retirement date, he must have: (1) been an "employee," which is defined to be an individual, not employed in a supervisory position, who has been employed under a collective bargaining agreement and on whose behalf his employer makes payments to the trust funds; (2) completed twenty years of continuous service in the industry; (3) completed three years of continuous service under a collective bargaining agreement; (4) been credited with payment of eighty weeks of contributions to the fund by the employer on his behalf; and (5) had contributions made by his last employer on his behalf under a collective bargaining agreement providing for contributions at the rate of not less than $7.00 per week for two years and $8.00 per week thereafter.

1. *See Brune v. Morse,* 475 F.2d 858, 860 (8th Cir. 1973).

Thirty-one and a half years of service in the teamsters industry was preliminarily credited to Phillips by the trustees. However, the Pension Pay Out Committee of trustees subsequently determined that Phillips was not working under the terms of the collective bargaining agreement in effect at Tri-State during the period of his employment because of his alleged supervisory status. The contributions to the pension fund made by Tri-State on behalf of Phillips were found by the trustees to have been submitted in error, and the application for a survivor's pension benefit was denied. The appellants argue the alleged non-unit status constituted a break in service [2] which meant that Phillips was unable to satisfy the Plan's requirements for continuous service in the teamster industry.[3] It is conceded that, but for his alleged non-bargaining unit supervisory status at Tri-State, Phillips would have met all the Plan requirements and Mrs. Phillips would be entitled to receive a survivor's pension benefit. The critical issue is whether a break in service resulted when, if at all, Phillips became employed in a supervisory capacity at Tri-State.

■ As the District Court correctly determined, a decision of the trustees can only be reversed if it is arbitrary or capricious. *Maness v. Williams,* 513 F.2d 1264, 1265 (8th Cir. 1975); *Beam v. International Organization of Masters, Mates, and Pilots,* 511 F.2d 975 (2 Cir. 1975); *Roark v. Lewis,* 130 U.S. App.D.C. 360, 401 F.2d 425, 426 (1968). The District Court found no evidence in the record before the trustees to support their finding that Phillips was not a collective bargaining unit employee at Tri-State. It held the decision of the trustees to be arbitrary and capricious.[4] Additionally, the court stated that Phillips could not properly be classified as a supervisor.[5]

■ While we reach the same result as the District Court, we do so on a slightly different basis. The break in service provisions [6] are ambiguous but, nonetheless, must provide the basis for the eligibility of Mrs. Phillips for survivor pension benefits. We read the provision to mean that if the break occurs prior to April 1, 1969, then a break in service occurs if no payments are made for five consecutive years. Thus, in this case, in order to satisfy the continuous service requirements, the alleged break in service must not have occurred before October 20, 1966, five years prior to Phillips' death.[7]

2. Article I, Section 13 of Central States, Southeast and Southwest Areas Pension Plan provides that:
   *A Break in Service,* * * * shall occur if an employee is not in covered employment for a period of five consecutive years between February 1, 1955 and April 1, 1969 or for a period of three consecutive years after April 1, 1969.

3. Article I, Section 14 of the Plan provides that:
   *Continuous Service in the Industry* as an employee shall mean accumulated years of employment prior to retirement calculated from the employee's last employment or re-employment date following the last break in service. * * *
   *Continuous Service as an Employee under a Collective Bargaining Agreement* shall mean accumulated years of employment prior to retirement calculated from the employee's last employment or re-employment date following the last break in service and excluding years of service not covered under a collective bargaining agreement.

4. The trial court alternatively held that no break in service existed by reading the continuous service requirements to mean only that an employee remain in the teamster industry, but not necessarily under a collective bargaining agreement. We find it unnecessary to reach this issue and specifically disclaim any ruling upon it.

5. The District Court felt it was improper to base its decision upon arguments as to Phillips' alleged supervisory status because it was never cited by the trustees as a reason for denial of benefits. We disagree. In our judgment, the denial was based upon a determination that Phillips was a supervisory employee even if the trustees did not explicitly so state. There is no other possible basis under the Plan for the denial.

6. *See* n.2, *infra.*

7. Even if a break in service occurred after this date, the requirements with respect to the duration and rate of employer contributions would also be satisfied. By February, 1966, contributions had been made on behalf of Phillips by his employer at the rate of $7.00 per week for two years with contributions at $8.00 per week thereafter.

Reviewing the record before the trustees at the time the pension application was denied, there is no evidence upon which the trustees could have determined that Phillips was a supervisory employee prior to 1966. The treasurer of Tri-State stated that Phillips was under the collective bargaining agreement as a leadman mechanic from 1960 to 1970 when the company went on strike. The bargaining agreements in effect between 1960 and 1970 included the position of leadman or lead mechanic on the minimum pay scale, along with a general description of the qualifications needed to be a mechanic. The local union representative stated only that Phillips came to Tri-State in 1960 as a superintendent of the shop, that the union accepted contributions by Tri-State on his behalf to both the pension and health and welfare funds, and that Phillips was a member of the local union from 1960 to 1970.[8]

On the basis of these facts, the District Court properly found that the decision of the trustees was arbitrary and capricious.[9] The only evidence tending to support the view that Phillips was a supervisor was the union representative's description of him as a superintendent. That general description, unsupported in the record, was largely negated by the local union's treatment of Phillips for ten years as a nonsupervisory employee.

The District Court permitted the parties to present additional evidence.[10] We find nothing in the supplemented record which would support a decision on our part that the decision of the District Court, in the light of this new evidence, was clearly erroneous.

Whether an employee is a supervisor is to be determined in light of the employee's actual authority, responsibility and relationship to management and "[o]f course, the specific job title of the employees involved is not in itself controlling." *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 290 n.19, 94 S.Ct. 1757, 1769, 40 L.Ed.2d 134 (1974). Supervisor, as defined by the Taft-Hartley Act:

> means any individual having authority, in the interest of the employer, to hire,

---

8. We are urged to decide this case on the basis of an estoppel allegedly created by the acceptance of payments made to the fund by Phillips' employer, assurances made to the President of Tri-State by a local union official and by a union trustee that Phillips would be included in the Plan, the payment of retirement pension to an employee with similar status at Tri-State as Phillips and misleading statements in the brochure distributed by the fund describing pension rights. We decline to do so. *Accord, Moglia v. Geoghegan,* 403 F.2d 110, 117 (2 Cir. 1968); *contra, Scheuer v. Central States Pension Fund,* 358 F.Supp. 1332, 1338 (E.D.Wis. 1973). The actuarial soundness of pension funds is, absent extraordinary circumstances, too important to permit trustees to obligate the fund to pay pensions to persons not entitled to them under the express terms of the pension plan. We do emphasize, however, that it is the duty of the trustees to verify on a regular basis the eligibility of those for whom contributions are being made. The breach of that duty might well expose the trustees to personal liability in an appropriate case.

   While the receipt and acceptance by the trustees of contributions to the pension fund on Phillips' behalf does not create an estoppel in his favor, it can be considered with all other evidence in determining whether he was a unit employee. The evidence is particularly rele-

vant here because there is some evidence that the trustees may have denied Phillips' pension because he took a withdrawal card from the union when the union lost its bargaining rights after a 1970 strike. The fact that Phillips withdrew from the union cannot bar his spouse from receiving benefits if she is otherwise entitled to receive them.

9. The appellants argue that the fact Phillips received the title "Vice President—Properties Equipment" on April 20, 1967, should be considered in determining whether he was a supervisory employee. Even if we accepted the proposition that Phillips became a supervisor when he became Vice President, it is irrelevant because of our reading of the break in service requirements.

10. If the District Court felt that the record was incomplete, a more appropriate course for it to have taken would have been to remand the matter to the trustees for a further exposition of the record. *Sturgill v. Lewis,* 125 U.S.App. D.C. 335, 372 F.2d 400, 401 (1966); *Danti v. Lewis,* 114 U.S.App.D.C. 105, 312 F.2d 345, 349 (1962). In this instance, it would be totally unproductive to require a remand; neither party objected to the District Court taking additional evidence and neither party suggests that additional evidence is available.

**56**

transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.
29 U.S.C. § 152(11).

Phillips wore work clothes to work and performed manual labor on the trucks as part of his duties. The company president made the decision with respect to hiring and firing for Phillips to implement. Leadmen, or straw bosses, are not necessarily supervisors even if they give minor orders and supervise the work of others. *N.L.R.B. v. Doctors Hospital of Modesto, Inc.*, 489 F.2d 772, 776 (9th Cir. 1973); *N.L.R.B. v. Sayers Printing Co.*, 453 F.2d 810, 813–815 (8th Cir. 1971); *Amalgamated Clothing Workers of America, AFL–CIO v. N.L.R.B.*, 137 U.S.App.D.C. 93, 420 F.2d 1296, 1300 (1969).

We affirm.