John E. DISTELRATH, Plaintiff,

v.

CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, Defendant.

No. 77-73C(3).

United States District Court, E. D. Missouri, E. D.

Oct. 13, 1978.

Thomas C. Hullverson, Hullverson, Hullverson, Frank, Inc., St. Louis, Mo., for plaintiff.

Donald J. Weyerich, LaTourette, Weyerich & Margulis, St. Louis, Mo., for defendant.

## MEMORANDUM

NANGLE, District Judge.

Plaintiff John E. Distelrath brought this suit pursuant to 29 U.S.C. §§ 186 and 1132, seeking a declaration that he is entitled to retirement benefits under a pension plan administered by defendant.

This case was tried before the Court without a jury. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, the stipulations of the parties, and being otherwise fully advised in the premises, hereby makes the following findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure:

## FINDINGS OF FACT

1. Plaintiff John E. Distelrath is a resident of St. Louis County, Missouri. Defendant Central States, Southeast and Southwest Areas Pension Fund is a trust fund created in accordance with the Central States, Southeast and Southwest Areas Pension Fund Trust Agreement.

2. Plaintiff was born on June 26, 1904. He was employed continuously by Diamond Reo Trucks, St. Louis, Inc., for more than twenty-five years until December, 1972 when he retired at the age of sixty-eight and one-half.

3. Plaintiff was a member of the Teamsters Union in 1948. He withdrew in 1951. Plaintiff rejoined the Teamsters Union, Local 618, in St. Louis, during 1967 and continued as a member in good standing until his retirement.

4. Prior to 1951, plaintiff worked in the parts department of Diamond Reo. In 1951, plaintiff was transferred into the office. He continued doing certain jobs which related to the parts department but did additional jobs as well. The job consisted of daily pricing of parts for service repair orders; billing for major parts assembly; maintenance of parts price sheet and special equipment items; tabulation of parts inventory; maintenance of truck serial number records; assisting in the determination of proper parts for certain older model trucks; checking income bills from suppliers; issuing credit memos and cash refunds; reviewing claims for defective parts, correspondence, accounts, bookkeeping and some payroll. Once plaintiff was employed in the office, he received extra pay. He was paid a flat salary, and not an hourly rate. He also started wearing a necktie to work. He had no supervisory powers. He had no right to hire, fire, or discipline employees. He could not authorize pay, overtime or time off from work.

5. In 1966, because of the retirement of another employee, plaintiff reassumed certain additional parts department duties.

6. In 1967, plaintiff re-joined the union in order to receive pension benefits. At the time, plaintiff was sixty-three years old. He was informed by a union representative that he would be entitled to pension benefits upon his retirement if he had worked in a teamster industry for twenty years.

7. Throughout the period of plaintiff's union membership, the provisions of the collective bargaining agreements between Teamsters Union, Local 618 and Diamond Reo contained provisions regarding retirement pension benefits administered by defendant and its trustees for the benefit of Diamond Reo's employees, including plaintiff. From 1967 through 1972, plaintiff completed over five years of continuous service under a collective bargaining agreement and his employer, Diamond Reo, paid more than two hundred and fifty weeks of contributions to defendant on plaintiff's behalf.

8. After plaintiff's retirement, plaintiff applied for retirement benefits from defendant. The Pension Payment Committee rejected the application on January 17, 1973 and the Pension Payment Appeals Committee rejected the application on April 3, 1973 and April 23, 1973. The Board of Trustees rejected the pension request on September 21, 1973.

9. Among the documents submitted in connection with plaintiff's application were several documents referring to plaintiff's employment as Assistant Parts Manager.

10. Office workers are presently in the Teamster industry and are covered by collective bargaining agreements in the St. Louis area. Office workers have been so covered since at least 1948 when the office workers of Western Auto, in St. Louis were taken into the union.

11. The relevant provisions of the Pension Plan are as follows:

ARTICLE I

*Section 11*

A. *Covered Employment* prior to Effective Date shall mean:

(1) For any employee who became a member of the Plan prior to May 1, 1971—

(a) Employment within a classification of work and in an industry which was at the time of such employment normally covered by Teamster contracts in the local metropolitan area; . . .

*Section 13*

A *Break in Service,* within the meaning of the Plan, shall occur if an employee is not in covered employment for a period of five consecutive years between February 1, 1955 and April 1, 1969 or for a period of three consecutive years after April 1, 1969. . . .

*Section 14*

A. *Continuous Service in the Industry* as an employee shall mean accumulated years of employment prior to retirement calculated from the employee's last employment or re-employment date following the last break in service. *Any service in the industry as an employer, as a member of a partnership or self-employed shall not be included as a creditable service for purposes of this Pension Plan.*

*Section 15*

*Normal Retirement Date* for an employee who became a member of the Plan on and after July 1, 1967 shall mean the date the employee attains his fifty-seventh birthday, or the date the employee completes twenty years of continuous service in the industry, or the date the employee completes five years of continuous service under a collective bargaining agreement, or the date on which one hundred twenty weeks contributions have been paid to the Pension Fund on behalf of the employee by the employer, whichever last occurs.

ARTICLE III

*Section 1*

*Conditions for Retirement.* An employee who has reached the NORMAL RETIRE-

MENT DATE shall be eligible for the retirement benefit provided for by this Pension Plan. [emphasis in original]

12. The benefits sought by plaintiff herein would be $300.00 per month for five years, and $300.00 per month for life. As of May 1, 1978, total benefits due would be sixty-four months, or $19,200.000 with interest thereon at six percent in an amount of $6,144.00, or a total amount of $25,344.00.

13. It has been the policy of the trustees of defendant Plan to allow credit for past employment where a new group comes into the fund, but not to allow credit for past employment where the employer participated in the Plan but the employee did not participate until shortly before retirement.

## CONCLUSIONS OF LAW

This Court has jurisdiction of the subject matter and the parties to this suit in accordance with 29 U.S.C. § 1132.

The sole issue presented herein is whether plaintiff's office work for Diamond Reo constitutes a break in service precluding an award of pension benefits. The parties have stipulated that plaintiff has attained his fifty-seventh birthday, that he has completed five years of continuous service under a collective bargaining agreement and that in excess of one hundred twenty weeks of contributions have been paid to the Pension Fund on behalf of plaintiff by his employer, Diamond Reo.

■ It is well established that this Court's review herein is limited. "A reviewing court will intervene in the administration of a pension plan only where the trustees have acted arbitrarily, capriciously or in bad faith." *Maness v. Williams,* 513 F.2d 1264, 1265 (8th Cir. 1975); *Phillips v. Kennedy,* 542 F.2d 52 (8th Cir. 1976). Nevertheless, it is the Court's conclusion that the trustees have acted arbitrarily herein and that plaintiff is entitled to his pension benefits.

In *Maness v. Williams, supra,* the plaintiff had worked in the employer's shipping department. His job later changed in that he was paid a monthly salary, no longer had manual labor duties and was responsible for paperwork, watching over the packing department, and training new employees. Thereafter, a settlement agreement was entered into by which plaintiff's job was included in the bargaining unit, and the plaintiff, upon joining the union, was credited with full seniority rights and benefits since his original employment with the Company. The plaintiff was held to be entitled to his pension. The court held that the requirement of twenty years continuous service in the industry did not require that such service be under a collective bargaining agreement. The court noted that the plaintiff's duties were "approximately the same" throughout the period of his employment and that he had not been a supervisor within the meaning of 29 U.S.C. § 152(11) as asserted by the trustees.

■ It is clear herein that plaintiff's post–1951 employment was employment "within a classification of work and in an industry which was at the time of such employment normally covered by Teamster contracts in the local metropolitan area . . . .". Office workers were covered by union contracts in the St. Louis area as early as 1948. Thus, *Brune v. Morse,* 475 F.2d 858 (8th Cir. 1973) and *Phillips v. Unity Welfare Association, Inc.,* 359 F.Supp. 1147 (E.D.Mo. 1973) are distinguishable. There was extensive overlapping of plaintiff's duties in the office and his prior duties in the parts department.

The fact that his employer referred to plaintiff as assistant parts manager is not controlling. *Phillips v. Kennedy, supra.* From the facts adduced, it is clear that plaintiff had no authority

. . . to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action . . . .. 29 U.S.C. § 152(11).

Thus, plaintiff was not employed in a supervisory capacity. *Maness, supra.*

It is the Court's conclusion that the Trustees' policy of denying credit for past employment where the employee worked for an employer who participated in the Plan but the employee himself did not participate until shortly before retirement is arbitrary and capricious. The language of the Plan itself is clear. It requires only the attainment of a certain age, a specified number of years of continuous employment in the industry, a specified number of years of continuous service under a collective bargaining agreement and a specified number of contributions on the employee's behalf. The construction placed upon such language by the Trustees combines these requirements, where the employer has participated in the Plan, to require that an employee participate throughout his employment with the employer. Such a construction can not preclude an award of benefits herein. See *Maness, supra* at 1267.

In Count II of his complaint, plaintiff asserts that, because of certain representations made to him by union representatives, defendants are estopped to deny him pension benefits. While the Court has serious doubts concerning the applicability of the doctrine of estoppel herein, see *Phillips v. Kennedy, supra; Thurber v. Western Conference of Teamsters Pension Plan,* 542 F.2d 1106 (9th Cir. 1976), the Court's determination that a denial of benefits was arbitrary and capricious renders the allegations of Count II moot.

Judgment will be entered for plaintiff. Plaintiff has also prayed for an award of attorney's fees. Such award is permissible herein. 29 U.S.C. § 1132. Accordingly, plaintiff will be ordered to supply this Court with an affidavit with respect to attorney's fees. Defendant will be given an opportunity to respond whereupon this matter will be resubmitted for the Court's consideration.