643 F.2d 1320
 90 Lab.Cas. P 12,638, 2 Employee Benefits Ca 1040
 Beavlee MORGAN, Appellee,
v.
Julius MULLINS, Trustee; Paul R. Dean, Trustee; Kenneth
Houck, Trustee; and The United Mine Workers of
America Health and Retirement Funds, Appellants.
 No. 80-1310.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 9, 1980.
Decided March 11, 1981.
 
 J. Michael Cogbill, Shaw & Ledbetter, Fort Smith, Ark., E. Calvin Golumbic, Gen. Counsel (argued), William F. Hanrahan, Deputy Gen. Counsel, Jeanne K. Beck, Associate Counsel, U.M.W.A. Health & Retirement Funds, Washington, D. C., for appellants.
 Gregory G. Smith, Pryor, Robinson, Taylor & Barry, Fort Smith, Ark., for appellee.
 Before LAY, Chief Judge, and BRIGHT and STEPHENSON, Circuit Judges.
 STEPHENSON, Circuit Judge.
 
 
 1
 The Trustees of the United Mine Workers of America Health and Retirement Funds (Trustees) appeal from the summary judgment entered by the district court[1] in favor of appellee Beavlee Morgan. The Trustees denied Morgan credit for the time he received Black Lung benefits on the grounds that Morgan's only employment after April 1, 1971, had not been for a signatory employer. The district court held the Trustees acted arbitrarily and capriciously in interpreting the pension plan to deny Morgan pension benefits. We affirm.
 
 
 2
 On October 29, 1973, Morgan filed an application for benefits from the UMWA Welfare and Retirement Fund. The pension eligibility requirements applicable to Morgan are set forth in Resolution 90, which was drawn and adopted by the Trustees in 1972, pursuant to their authority under the 1950 Wage Agreement. Morgan's application was eventually denied for failure to meet certain requirements of Resolution 90.
 
 
 3
 Morgan filed a complaint in the Arkansas courts, alleging the Trustees had acted arbitrarily and capriciously in denying him pension benefits. The suit was removed to federal court and an answer filed by the Trustees on May 24, 1978.
 
 
 4
 An additional hearing was set before the Trustees on July 11, 1978. The Trustees finally determined, and it is not contested, that Morgan had worked a total of 163/4 credit years in the coal industry when he ceased work in October 1973. 121/2 years credit had been for employment with an employer who had signed the applicable National Bituminous Coal Wage Agreement. Morgan argued that his receipt of Black Lung benefits from 1973 to 1977 should apply as "years of service" as defined in Resolution 90, but the Trustees refused to credit the Black Lung years because his employment in the mines subsequent to April 1, 1971, was with a nonsignatory employer. The case, before the district court on cross-motions for summary judgment, was referred to a magistrate. The magistrate, and subsequently the district court, agreed with Morgan and determined that the Trustees had acted arbitrarily and capriciously in their determination. This appeal followed.
 
 
 5
 Review by the courts of the Trustees' decision is limited. A reviewing court will intervene in the administration of a pension plan only where the trustees' action is arbitrary, capricious, or an abuse of discretion. Bueneman v. Central States, Southeast and Southwest Areas Pension Fund, 572 F.2d 1208, 1209 (8th Cir. 1978); Phillips v. Kennedy, 542 F.2d 52, 54 (8th Cir. 1976); Maness v. Williams, 513 F.2d 1264, 1265 (8th Cir. 1975). Where the Trustees impose a standard not required by the pension plan itself, this court has stated that such action "would result in an unwarranted and arbitrary construction of the Plan." Maness v. Williams, supra, 513 F.2d at 1267.
 
 
 6
 Thus our inquiry is to determine whether the Trustees' interpretation of Resolution 90 violates the above standards. Resolution 90 provides in relevant part:
 
 I. ELIGIBILITY
 
 7
 A. An applicant who ceased work in the bituminous coal industry shall be eligible for a pension if he has:
 
 
 8
 1. Attained the age of fifty-five (55) years or over at the date of his application for pension.2. Completed twenty (20) years' service in the coal industry in the United States, a "year of service" being as defined in paragraph II A hereof, provided, however, that as a part of such twenty (20) years' service, the applicant must have worked, after May 28, 1946, the following minimum years of signatory service, a "year of signatory service" being as defined in paragraph II B hereof:
 
 
 9
 Employment in the coal industry after April 1, 1971, will be credited as service required for pension eligibility as provided in paragraphs I A 2 and I A 3 hereof only if it is performed for an employer signatory to the bituminous coal wage agreement then in effect.
 
 II. DEFINITIONS
 
 10
 A. A year of service.
 
 
 11
 1. A year of service, as required in paragraphs I A 2 and I A 3, is a calendar year during which an applicant:
 
 
 12
 (a)(1) Worked, subsequent to January 1, 1937, as an employee in a job classified in the then existing bituminous coal wage agreement for an employer in the coal industry * * *.
 
 
 13
 (b) Received state workmen's compensation payments pursuant to an award as a result of an occupational disease or injury sustained in the mine while regularly employed in a classified job under the bituminous coal wage agreement then in effect, provided, in the case of occupational disease, applicant had been so employed by an employer signatory to the bituminous coal wage agreement then in effect for at least ten (10) years after May 28, 1946. Credit may be given up to a maximum of four (4) years' service credit from date of injury, or from the date of last employment in case of occupational disease, provided applicant did not work regularly in jobs outside the coal industry during the compensable period. Benefits awarded pursuant to the Federal Coal Mine Health and Safety Act of 1969 shall be deemed "workmen's compensation payments" within the meaning of this section, only if the miner was last regularly employed in the coal industry after the enactment date of the Act, December 30, 1969, in a classified job under the bituminous coal wage agreement then in effect, and had been so employed by an operator signatory to the agreement for at least ten (10) years after May 28, 1946.
 
 
 14
 (c) Rendered service as an employee of the United Mine Workers of America * * *.
 
 
 15
 (d) Served in the military service of the United States in any war, * * *.
 
 
 16
 B. A year of signatory service.
 
 
 17
 1. A year of signatory service referred to in paragraphs I A 2 and I A 3 is:
 
 
 18
 (a) a year of service as defined in paragraph II A 1(a)(1) hereof during which an applicant worked, after May 28, 1946, as an employee in a classified job for an employer signatory to the bituminous coal wage agreement then in effect, or
 
 
 19
 (b) a year of service as defined in paragraph II A 1(b) hereof, during which an applicant received state workmen's compensation payments pursuant to an award as a result of an occupational disease or injury awarded after May 28, 1946, immediately following employment as an employee in a classified job for an employer signatory to the bituminous coal wage agreement then in effect * * *.
 
 
 20
 (emphasis added).
 
 
 21
 It is not disputed that Morgan has attained the age of fifty-five and has sufficient signatory service as is required by section I.A.2 of the plan. (I.A.2). The contested point is whether he has twenty "years of service" as required by I.A.2. I.A.2 expressly refers the reader to the definition of "year of service" contained in II.A.1(a)-(d). Morgan is no longer contesting the Trustees' decision that he has worked 163/4 years in a classified job under II.A.1(a). He is therefore 31/4 years short of the requisite twenty years of service and seeks to have 31/4 years credited for his receipt of Black Lung benefits beginning in the fall of 1973. Morgan claims that he has satisfied the requirements of II.A.1(b) because he has received Black Lung benefits for the requisite period and "was last regularly employed in the coal industry after * * * December 30, 1969, in a classified job under the bituminous coal wage agreement then in effect, and had been so employed by an operator signatory to the agreement for at least ten (10) years after May 28, 1946." We agree with Morgan and the district court that the plain meaning of the words in Resolution 90 indicate that Morgan qualified for pension benefits 31/4 years after he began to receive Black Lung benefits.
 
 
 22
 Our inquiry does not end there, however. The Trustees argue that even if Morgan's interpretation is reasonable, the Trustees' decision must be upheld if it too is reasonable. Lowenstern v. International Association of Machinists and Aerospace Workers, 479 F.2d 1211, 1213 (D.C.Cir.1973). We therefore examine the reasonableness of the Trustees' interpretation.
 
 
 23
 The last paragraph of I.A.2 states that employment in the coal industry after April 1, 1971, must be for a signatory employer for the miner to receive service credit. The Trustees interpret "employment in the coal industry" to mean employment as defined in II.A.1(a),[2] and also the "employment equivalents" defined in II.A.1(b)-(d) receipt of Black Lung benefits, receipt of Workmen's Compensation, employment in the United Mine Workers of America, and military service. Morgan argues that such an interpretation places additional requirements on the receipt of the pension benefits which the plain words of Resolution 90 do not require. He notes that if this interpretation was intended, I.A.2 could have easily been written to so indicate.[3]
 
 
 24
 The Trustees contend their interpretation is reasonable because it has a proper and reasonable purpose to treat nonworking miners the same as working miners. Morgan's employment in 1972 and 1973 had been for a nonsignatory employer and clearly was not and could not be counted towards the twenty years of service. Morgan is not contesting this. Therefore if he had continued to work for this nonsignatory employer, he would have earned no more credit than the 163/4 years he already possessed. The Trustees argue that to award him credit for Black Lung benefit years would be to treat nonworking miners more favorably than working miners. Thus the Trustees contend that a reasonable interpretation is to treat working and nonworking miners in an equal manner. This argument, however, assumes that but for Morgan's disabling disease he would have remained working for a nonsignatory employer. However, Morgan had worked most of his coal industry years, including 1967-1971, for signatory employers. Knowing he needed a few more years of service to receive the pension benefits, it is reasonable to assume he would have sought signatory employment at the first opportunity. However, because of his disease, he was unable to work for a signatory employer.
 
 
 25
 The provision in II.A.1(b) for credit for Black Lung benefit years is intended to reward miners who have substantial signatory employment but were prevented from further employment because of the occupational disease. This is made clear by the II.A.1(b) requirement that the miner have ten years of signatory employment in order to count Black Lung benefit years, whereas Morgan otherwise needed only five years of signatory employment. Thus the Trustees' interpretation frustrates the purpose of the plan to make fair provision for miners who have become incapacitated, but have significant signatory employment.
 
 
 26
 There is a further indication that the Trustees' interpretation is unreasonable and unwarranted. II.A.1(b) also requires that in order for Morgan to obtain credit for the time he received Black Lung benefits, he must have been employed after December 30, 1969, in a classified job under the bituminous coal wage agreement. However, if we accept the Trustees' interpretation and apply the last paragraph I.A.2 to credit for Black Lung benefits time, then Morgan is required to have been employed after April 1, 1971, in a classified job with an employer signatory to the wage agreement. Thus the "last employment" clause of II.A.1(b) (the Black Lung benefits section) would be rendered superfluous. In Maness v. Williams, supra, this court found that the trustees' construction of a pension plan was arbitrary and capricious because the interpretation made certain requirements in the plan superfluous. See also Reiherzer v. Shannon, 581 F.2d 1266, 1272-73 (7th Cir. 1978).
 
 
 27
 We conclude the Trustees acted arbitrarily and capriciously in interpreting Resolution 90 in a way which is inconsistent with the plain words of the document and which renders some requirements superfluous.[4]
 
 
 28
 Because the record does not indicate exactly when Morgan began to receive Black Lung benefits, we agree with the district court that the case must be remanded to the Trustees for this determination and the consequent award of pension benefits.
 
 Affirmed.[5]
 
 
 [1]
 The Honorable Paul X Williams, Chief Judge, United States District Court for the Western District of Arkansas
 
 
 [2]
 Part II.A.1(a) provides, in relevant part:
 A. A year of service.
 
 
 [1]
 A year of service, as required in paragraphs I A 2 and I A 3, is a calendar year during which an applicant:
 (a)(1) Worked, subsequent to January 1, 1937, as an employee in a job classified in the then existing bituminous coal wage agreement for an employer in the coal industry * * *.
 
 
 [3]
 The provision (I.A.2) could have easily been written to state that no credit (as opposed to only employment credit) could be obtained after April 1, 1971, unless it was signatory credit (as opposed to employment for a signatory employer)
 
 
 [4]
 The Trustees argue that they have consistently interpreted Resolution 90 to preclude the award of non-signatory pension credit based on Black Lung benefits received after April 1, 1971. They state a reasonable interpretation consistently applied is to be accorded substantial if not controlling weight in interpreting the purpose and meaning of the trust document. See Miracle v. United Mine Workers of America Welfare and Retirement Fund, 373 F.Supp. 603, 604 (D.D.C.1974). However, if the interpretation is unreasonable from the beginning, such an interpretation may still be arbitrary and capricious. Further, the only record evidence of this consistently applied interpretation is an affidavit by Robert T. Boylan, Director of the Funds, stating this conclusion. None of the documents in evidence explaining pension requirements to the miners, however, discuss this precise point. Nor does the Trustees' construction of Resolution 90 concerning Black Lung benefit years expressly appear in any of their interpretive documents
 
 
 [5]
 Morgan argued that if the Trustees' interpretation was held to be reasonable, then it should be struck down as violative of section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186, as an unreasonable last signatory employment requirement. See Roark v. Boyle, 439 F.2d 497 (D.C.Cir.1970), and its progeny, e. g., Pete v. United Mine Workers of America Welfare and Retirement Fund, 517 F.2d 1275 (D.C.Cir.1975) (en banc). The Trustees' interpretation in the instant case would not result in a last signatory employment contract but its effect is similar. Our holding that the Trustees' interpretation is an unreasonable reading of the contract obviates reaching the merits of Morgan's alternative argument. We note, however, that our holding is supported by Knauss v. Gorman, 583 F.2d 82, 89 (3d Cir. 1978), which held that, if a "provision deprives an otherwise eligible employee of all benefits derived from substantial contributions made in his behalf, § 302(c)(5) requires that the defenders of such provision come forward with substantial justification * * * in terms of the Fund's legitimate goals."