Claude I. VAN GUNTEN,
Plaintiff-Appellant,

v.

CENTRAL STATES, SOUTHEAST AND
SOUTHWEST AREAS PENSION
FUND, Defendant-Appellee.

No. 80–3597.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 8, 1981.

Decided March 19, 1982.

Gregory L. Van Gunten, Swanton, Ohio, for plaintiff-appellant.

Bernard S. Goldfarb, Goldfarb & Reznick, Mark V. Webber, Cleveland, Ohio, Alan Levy, Goldberg, Previant & Uelmen, Milwaukee, Wis., for defendant-appellee.

Before MERRITT and KENNEDY, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PER CURIAM.

Appellant Claude Van Gunten, denied pension benefits by the trustees of the Teamsters Union Central States, Southeast and Southwest Areas Pension Fund, brought this action under section 502 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132, for a declaration

of his pension rights and an award of benefits. The case was submitted on a stipulation of facts and issues. He appeals the District Court's decision that the trustees did not act arbitrarily or capriciously in denying his claim to pension benefits. We agree with the District Court's conclusion and affirm its judgment.

Appellant was continuously employed as a truck driver from 1939 until his retirement in 1973. He was employed by Dorwood Rental Co. (later called Transervice Systems) from 1953 to 1973. In addition to driving a truck appellant was a' vice-president of Dorwood and owned 6% of its stock. Appellant's brother, Floyd Van Gunten, was the president of Dorwood and owned the remaining 94% of its stock.

Appellant did not have any supervisory authority at Dorwood. However, while all other Dorwood drivers were paid on an hourly basis, appellant was paid a salary. The salary was greater than the average pay of Dorwood's hourly employees. Appellant paid union dues from 1953 until his retirement in 1973, and Dorwood made contributions to the Teamsters Health and Welfare Fund on appellant's behalf during this entire period. Beginning April 30, 1955 Dorwood also made contributions to the Teamsters Pension Fund on behalf of its hourly employees. It did not, however, begin contributing to the Teamsters Pension Fund on appellant's behalf until 1964.

Appellant applied for pension benefits in 1974. The claim was denied, and appellant pursued his intra-fund remedies. In 1977 the Full Board of Trustees upheld the denial of his claim. The trustees based their decision on the conclusion that appellant was not a member of the collective bargaining unit from 1955 to 1964, and therefore was out of "covered employment" during this period and sustained a "break in service" that made him ineligible for benefits.

The standard for court review of a determination to deny pension benefits is whether the denial was arbitrary, capricious, or in bad faith. *Maness v. Williams*, 513 F.2d 1264 (8th Cir. 1975). In support of their conclusion that appellant was not a member of the collective bargaining unit between 1955 and 1964 the trustees relied on appellant's status as an officer of Dorwood; the fact that he was paid a different amount and on a different basis (a salary, rather than wages on the basis of hours worked or miles driven) than were the members of the collective bargaining unit; the fact that no contributions were made to the Pension Fund on appellant's behalf between 1955 and 1964, although the collective bargaining agreement required that such contributions be made for all members of the collective bargaining unit; and a letter to the Fund from the president of Dorwood in which appellant was identified as not a member of the collective bargaining unit. Based on this evidence and the terms of the Plan, the trustees' conclusion that appellee was not in the bargaining unit from 1955 to 1964 is neither arbitrary nor capricious. There is no claim that the trustees acted in bad faith.

A somewhat detailed analysis is necessary to review the trustees' interpretation of the terms of the Plan to deny benefits to appellee because he was not in the bargaining unit. In order to be eligible to receive benefits under the Plan appellant had to satisfy the following conditions: (1) he had to be at least 57 years of age; (2) at least 80 weeks of payments into the Fund must have been made on his behalf; (3) he had to have at least three years of service under a collective bargaining agreement; and (4) he had to have 20 years of continuous service in the industry as an employee. Pension Plan, article I, section 15. In the present case there is no disagreement that appellant fulfilled the first three of these requirements. The only point in dispute is whether appellant satisfied the provision requiring twenty years of continuous service in the industry as an employee.

The Plan defines "continuous service in the industry as an employee":

Continuous Service in the Industry as an employee shall mean accumulated years of employment prior to retirement calculated from the employee's last employment or re-employment date following the last break in service.

Pension Plan, article I, section 14. The trustees determined that appellant sustained a break in service from 1955 to 1964, the time when no pension contributions were made on appellant's behalf while they were being made on behalf of Dorwood's other employees. Because of the break in service, appellant did not accumulate twenty years of service in the industry by the time of his retirement in 1973.

Article I, section 13 of the Plan states that "[a] Break In Service, within the meaning of the Plan, shall occur if an employee is not in covered employment for a period of five consecutive years between February 1, 1955, and April 1, 1969, ..." There are two definitions of "covered employment." Article I, section 11(A) defines covered employment prior to the "effective date" and section 11(B) defines covered employment after the "effective date." Under article I, section 2 the "effective date" is the later of February 1, 1955, or the date an employer begins contributing to the Fund on behalf of its employees.

Dorwood began contributing to the Fund on April 30, 1955, so this is the applicable effective date. Thus, after April 30, 1955, employees of Dorwood were in "covered employment" only if they satisfied section 11(B). Section 11(B) defines covered employment after the effective date as "employment by an employer, as defined herein, who has satisfied the requirements for participation as established by the Trustees and who has agreed to be bound by the Trust Agreement." One further provision of the Plan is critical in this analysis. Article I, section 12, defines "year of employment." After the effective date a "year of employment" is a "calendar year ... in which contributions for a period of at least thirty-five weeks have been paid to the Pension Fund by the employer on behalf of the employee." Article I, section 12(b). Under this definition, appellant did not accumulate any years of employment between 1955 and 1964.

There is no express requirement in the above provisions that one be a member of a collective bargaining unit in order to be in "covered employment" after the effective date. However, after the effective date an employee only gets credit toward the requirement of twenty years of continuous service in the industry for years in which pension contributions are made on his behalf, and pension contributions are only made on behalf of members of a collective bargaining unit. It is perfectly consistent with the Plan that work which does not count toward years of employment is also not "covered employment," so may constitute a "break in service." The terms of the Plan do not compel the conclusion that after the effective date one must be a member of a collective bargaining unit to be in covered employment, but the conclusion is a reasonable one. Since appellant was outside covered employment for more than five consecutive years, he sustained a break in service and did not accumulate the twenty years of service in the industry necessary to make him eligible for pension benefits.

Our decision that the trustees could, consistent with the terms of the Plan and without acting arbitrarily, deny benefits to an employee who was not a member of a collective bargaining unit for more than five years after the effective date conflicts with interpretations of the Plan by at least two other circuits. *See Reiherzer v. Shannon,* 581 F.2d 1266, 1275 (7th Cir. 1978); *Maness v. Williams, supra,* 513 F.2d at 1266–1267. The *Reiherzer* court addressed the precise issue we face here—whether employment that is not under a collective bargaining agreement can be outside "covered employment" and so constitute a "break in service." The court concluded that it could not because under section 11(A) "covered employment" is defined roughly to mean employment using typical Teamster skills, and section 11(A) clearly does not require work under a collective bargaining agreement. This analysis fails to distinguish covered employment *prior to* the "effective date," which section 11(A) defines, and covered employment *after* the "effective date," which is governed by section 11(B). The two different definitions for before and after the effective date are obviously designed to permit long-time

teamsters to receive pension benefits even where for much of their careers they were not fortunate enough to work for an employer who was a party to the collective bargaining agreement. At the same time, an employee who works for an employer that makes pension contributions on behalf of *some* of its employees is prevented from getting a free ride where his employer does not make contributions on *his* behalf as well.

The *Maness* court noted that two requirements for receiving benefits under the Plan are that an employee has worked for three years under a collective bargaining agreement and that he has twenty years of service in the industry. The court thought it would render the three-year requirement meaningless if an employee could satisfy it yet be denied benefits because he failed to spend additional time working under a collective bargaining agreement as part of his twenty years of service in the industry. The *Reiherzer* court adopted this conclusion. We do not agree that the trustees' interpretation of the Plan renders the three-year requirement nugatory. It still acts as a limit on the windfall to those teamsters who come within "covered employment" under section 11(A), by requiring that they spend a minimal amount of time under the collective bargaining agreement.

■ Appellant also tries to raise an estoppel argument against the trustees. In 1965 he inquired whether, once Dorwood began making contributions to the Fund on his behalf, he would get "past service credit" for the period 1955–1964. The trustees responded that they would be able to grant past service credits for each year appellant was an employee of some firm in the industry. Assuming without deciding that an estoppel argument may be made against the trustees, appellant could not establish his reliance here. If he was a member of the collective bargaining unit the collective bargaining agreement required that pension contributions be made on his behalf. He had no choice in the matter. Nor did appellant have the option of joining or not joining the collective bargaining unit, de-

pending on whether or not that suited his purpose to obtain pension benefits. It does not appear that the letter from the trustees could have changed appellant's behavior in any way.

■ The only relief appellant sought here was a determination that, according to the terms of the Plan, the trustees acted arbitrarily and capriciously in denying him benefits. We hold that, according to the terms of the Plan, they did not. We hold that appellant in this case is not entitled to benefits because he was not in "covered employment" between 1955 and 1964, and there is no claim that he would have been in covered employment but for a breach of duty by his employer or the trustees. In order to emphasize the limits of our holding, we note that the mere fact that pension contributions are not made on behalf of an employee does not provide a basis for denying the employee relief if the employee alleges that contributions were wrongfully withheld. Appellant here made no such allegation. He did not sue the trustees for breach of a duty to insure that contributions were made, or sue his employer for breach of its duty to make payments. Thus, we do not decide whether appellant has an action against Dorwood for failure to make required contributions to the Fund, or against the trustees or the union for failure to enforce any obligation of Dorwood to contribute to the Fund. Nor do we decide the case where the failure to make contributions is concealed from an employer, although here appellant was an officer of the corporate employer. Our opinion should not be read to deny a remedy against pension trustees if the trustees have breached any duty they have to insure that proper contributions are made on an employee's behalf. It is limited to whether the trustees' determinations that appellant was not in covered employment from 1955 to 1964, and that this was a break in service within the terms of the Pension Plan, were arbitrary and capricious.

The judgment of the District Court is affirmed.

PHILLIPS, Senior Circuit Judge (concurring in the result).

I concur in the result reached by the majority, but would limit the opinion to a holding that the action of the trustees in denying appellant's claim for pension benefits was not arbitrary or capricious under the unique facts of this case. Appellant was an officer and stockholder of the employer corporation and was a brother of its president. His brother, in his capacity as president of the corporation, wrote a letter to the trustees on June 7, 1974, to the effect that no contributions were being made for appellant because he was not a member of the bargaining unit.

Appellant contends that his brother was mistaken, and that appellant in fact was a member of the bargaining unit throughout the period of his employment. There is no showing in the record that, after this error was discovered by appellant's brother, the employer corporation ever offered to make back payments to the trustees of the amounts that should have been paid on behalf of appellant during the ten years in question.

Appellant, as an officer and employee of the corporation and the brother of the president, was in a position to have ascertained whether contributions were being made on his behalf (if he already was not aware of that fact). He also was in a position to have insisted that the corporation correct its mistake by tendering to the trustees back payments on his behalf.

Under these facts, the trustees clearly did not act arbitrarily or capriciously in their determination that appellant was not a member of the bargaining unit from 1955 to 1964.