Patricia BRANDON, Plaintiff,

v.

**METROPOLITAN LIFE INS. CO., Defendant.**

No. 86–0897.

United States District Court,
E.D. Michigan, S.D.

Jan. 14, 1988.

Frank R. Langton, Sterling Hts., Mich., for plaintiff.

Thomas G. McNeill, Detroit, Mich., for defendant.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HACKETT, District Judge.

This matter is presently before the court on defendant's motion for summary judgment pursuant to F.R.Civ.P. 56. Defendant alleges that its denial of plaintiff's extended disability benefits (EDB) was not arbitrary and capricious. Oral argument was heard on this motion on January 6, 1988, at 2:00 p.m.

*Standard for Summary Judgment*

F.R.Civ.P. 56(c) provides that a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The principles governing consideration of a motion for summary judgment are discussed in *Watkins v. Northwestern Ohio Tractor Pullers Assn.,* 630 F.2d 1155 (6th Cir.1980) where the court stated:

> The District Court may grant a motion for summary judgment only if it finds from the whole record before it that

there are no material facts which are in dispute. It may not make findings of disputed facts on a motion for summary judgment. The movant has the burden of showing conclusively that there exist no genuine issues as to a material fact and that the evidence together with all inferences to be drawn therefrom must be considered in the light most favorable to the party opposing the motion. The movant's papers are to be closely scrutinized while those of the opponent are to be viewed indulgently.

*Id.* 1158; see also *Ghandi v. Police Dept. of the City of Detroit,* 747 F.2d 338 (6th Cir.1984).

The party moving for summary judgment "bears the burden of clearly establishing the non-existence of any genuine issue of fact material to a judgment in his favor." *United States v. Article of Device,* 527 F.2d 1008, 1011 (6th Cir.1975); see also *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Smith v. Hudson,* 600 F.2d 60 (6th Cir. 1979). If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First National Bank of Arizona v. Cities Services Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1967), *reh. denied,* 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968); see also *Daily Press Inc. v. UPI,* 412 F.2d 126 (6th Cir.1969), *cert. denied,* 396 U.S. 990, 90 S.Ct. 480, 24 L.Ed.2d 453 (1969); *Bufalino v. Michigan Bell Telephone Co.,* 404 F.2d 1023 (6th Cir.1968). "... Conclusory and unsupported allegations do not satisfy this burden". *Davis v. Robbs,* 794 F.2d 1129 (6th Cir.1986). Rule 56(e) makes clear that parties are not entitled "to get to the jury on the basis of allegations in their complaints, coupled with the hope that something can be developed at trial ..." *First National Bank of Arizona v. Cities Services Co.,* 391 U.S. at 289–90, 88 S.Ct. at 1593. The opponent must at least produce "sufficient evidence supporting the claimed factual dispute ... to require a jury or

judge to resolve the parties' differing versions of the truth at trial. *Id.* at 289, 88 S.Ct. at 1592.

In our view, the plain language of *Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,* and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since *a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.*

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). (emphasis added)

### Background

Viewed in a light most favorable to plaintiff, as required in a motion for summary judgment, *Invictus Records, Inc., v. American Broadcasting Co.,* 98 F.R.D. 419, 426 (E.D.Mich.1982), the facts and circumstances giving rise to this suit are as follows:

The Metropolitan/GM Group Policy was issued as a result of the collective bargaining agreement between GM and the UAW, dated September 14, 1979. The Group Policy provides to eligible GM employees insurance coverage and benefits for, *inter alia,* life, survivor income, accident and sickness, and extended disability benefits (EDB). To qualify for EDB, an eligible employee must be "totally disabled" and thus "wholly prevented as a result of bodily injury or disease, either occupational or non-occupational in cause, from engaging in regular employment or occupation, for remuneration or profit, with [GM] at the plant or plants where the employee has seniority."

The Group Policy further provides that: "[Metropolitan] *may* require the employee, as a condition of eligibility [for EDB], to submit to examinations by a physician or physicians designated by it for the purpose of determining the employee's initial or continuing disability.... The opinion of

such an examiner with respect to the existence of the employee's initial or continuing disability *shall be final and binding* upon [Metropolitan] and such employee." The collective bargaining agreement also states that: "the opinion of such an examiner with respect to the existence of ... total disability as defined in Article II, § 8(a) of the Program [which relates to EDB] shall be final and binding upon the corporation, the union, the insurance company, and the employee."

On September 11, 1967, plaintiff commenced employment with Fisher Division of GM. Plaintiff was employed in the job classification of "inspect and pack". This job entails "the visual inspection of parts for defects and the packing of these parts into wire baskets and/or cardboard boxes." Beginning in May, 1981, plaintiff began to complain of pain in her left wrist and ceased active employment with GM on May 8, 1981.

Thereafter, plaintiff submitted an application for sickness and accident benefits under the Group Policy. Eligibility for sickness and accident benefits requires that an employee become "wholly and continuously disabled ... so as to be prevented thereby from performing any and every duty of the employee's occupation." In short, eligibility for sickness and accident benefits requires that plaintiff be unable to perform *her job*. However, on December 21, 1981, the Social Security Administration notified plaintiff that she was not entitled to disability benefits because her condition was "not disabling within the meaning of the [Social Security] law."

Plaintiff received sickness and accident benefits for the maximum fifty-two (52) weeks and on April 24, 1982, filed an application for EDB. As discussed above, eligibility for EDB requires that plaintiff be unable to perform any job at any GM plant. Effective May 13, 1982, plaintiff began to receive EDB.

At the request of General Motors plaintiff was examined by Dr. Robert D. Larsen. In his report dated June 19, 1982, Dr. Larsen concluded that:

In summary, on May 11, 1982, I found no abnormality of any significance in either wrist of this woman. I found no abnormality which would account for her complaints. I found no abnormality which would require any type of treatment. The objective findings indicate that she continues to be employable in regular two handed work activities consistent with her sex, age and physical build.

Accordingly, by letter of June 29, 1982, R.D. Setser of GM informed plaintiff that: "It is Dr. Larsen's opinion that you are able to return to regular two-handed work activities immediately, therefore, please report to this location for examination for rehire."

Plaintiff returned to work for one day on July 12, 1982, but claimed that she was unable to perform the job which GM offered her. By letter of July 16, 1982, Donald Bunn of GM communicated the following to Metropolitan:

Also, be advised that Patricia Brandon rehired on Friday, 7-9-82 to start work on Monday, 7-12-82. Above employee worked one day, 7-12-82, and attempted to be placed on sick leave of absence again but was denied by the plant on the basis that there was a job available that she could easily manage. The job was a non-restrictive one but was the easiest one in the department. It consisted of observing light weight moldings moving on a conveyer belt, and the removal of an occasional defective piece. The weight of these moldings are less than a pound. Patricia Brandon stated that she could not manage this job and has not been able to return to work since.

Metropolitan recommenced EDB payments effective July 13, 1982, pending further medical examinations. On July 30, 1982, plaintiff was examined by an orthopedist, Dr. E. Obianwu. His report indicated:

I do not recognize any objective evidence of disability in this individual. I believe that she can return to work.

On September 19, 1982, plaintiff was examined by Drs. Alan R. Crain and R.E. Noon. In his medical opinion Dr. Crain concluded:

Active motion of the right wrist is restricted voluntarily by the examinee. Is able to make a full fist, straighten the fingers out, spread them apart and bring them together. Sensation is present and normal in the fingers. Able to approximate the thumb to the index, middle, ring and little finger successfully.... No sensory changes are found in the left hand. Is able to make a good fist, straighten the fingers out, spread them apart and bring them together.... Examinee would be considered able to work on a restricted basis for three weeks; using the left arm, no lifting over two pounds.

Similarly, Dr. Noon concluded that: "the bony structures of the hands and about the wrist joints are well mineralized, and intact. The articular margins are smooth. The joint spaces are well preserved. No destructive joint or bone pathology is noted."

Based upon these medical opinions, on October 21, 1982, Metropolitan employee Gloria DiBianca telephoned GM to inquire if positions were available in accordance with Dr. Crain's restriction. Ms. DiBianca's internal note indicates:

I called plant—they do have a job available within restrictions. The insured was asked previously to [return to work] ... [GM employee Ron Setser] said job is still available but [plaintiff] just doesn't want to work. She states she couldn't manage it.

Ms. DiBianca's supervisor noted in the claims file on October 22, 1982: "Agreed to terminate claim as of date of [DiBianca note]. Indicate there is a job at unit for her within restrictions placed on job."

Accordingly, on October 26, 1982, Ms. DiBianca sent a letter to plaintiff indicating that EDB had been terminated effective October 31, 1982, because:

We understand that there is a job at the General Motors location where you last worked, which is within the restrictions imposed and that this job would be available to you.

*One year later*, after a one day hearing, on October 11, 1983, an administrative law judge (ALJ) issued a decision awarding plaintiff worker's compensation benefits in the amount of $181 per week. The court found that:

Plaintiff suffered an aggravation to her right wrist and hand while employed at favored work, culminating in her being totally disabled from her employment at General Motors as of May 5, 1981 ... It is further found that plaintiff has not permanently and totally lost the industrial use of both hands, and is therefore not totally and permanently disabled as defined within the act.

GM has taken an appeal from this decision.

Thereafter, plaintiff's attending physician, Dr. Joseph L. Posch, submitted to Metropolitan a form statement dated December 11, 1984, indicating that plaintiff had not "recovered sufficiently to return to work." By letter of January 30, 1985, Metropolitan informed plaintiff that the December 11, 1984, medical statement submitted by Dr. Posch did not contain any new objective medical evidence which would allow Metropolitan to disregard the results of Dr. Crain's medical opinion.

On May 15, 1985, Metropolitan forwarded copies of all additional medical information, including medical information from plaintiff's worker's compensation file, to Dr. Crain for review. On May 28, 1985, Dr. Crain responded that the additional medical information would not cause him to change his previous opinion that plaintiff was able to perform restricted work.

On May 1, May 7, and July 18, of 1985, Metropolitan employees contacted GM personnel who indicated on each occasion that GM had a position available within Dr. Crain's medical restriction and that plaintiff refused to perform the job. Accordingly, by letter of July 22, 1985, Metropolitan communicated to plaintiff's attorney:

On reviewing our files and by contacting General Motors, we have verified that Miss Brandon was offered a job within her restrictions. This job entails sitting and observing light weight moldings on a conveyor belt and removing occasional defective pieces with a maximum weight of one pound. Therefore, since there

was a job available to Ms. Brandon which was within her restrictions, we must reiterate our decline of further benefits.

Following further inquiry of Metropolitan by plaintiff's counsel, on October 11, 1985, and November 15, 1985, Metropolitan contacted Ron Setser of GM who reiterated that plaintiff had been offered a job within her medical restriction but that plaintiff refused to perform that job.

In summary, in two medical opinions, Drs. Larsen and Obianwu concluded that plaintiff was able to work without restriction. Dr. Crain concluded that plaintiff could return to work with the restricted use of her left arm to lifting weights of two pounds or less. Dr. Crain's opinion was relied on by Metropolitan. By letter of July 16, 1982, and in telephone conversations of October 21, 1982, and May 1, May 7, July 18, October 11, and November 15, of 1985, GM employees detailed for Metropolitan employees that plaintiff had been offered a position which she could perform within the medical restrictions proposed by Dr. Crain. Plaintiff claims that she attempted to perform that position for the morning of one day, July 12, 1982, but was unable to do so. Plaintiff's physician states that she is disabled.

### Standard of Review

■ Under ERISA a plaintiff has the burden of proving not that he or she is disabled within the meaning of the ERISA benefit plan sued upon, but rather that the plan fiduciary's decision to terminate benefits was "arbitrary and capricious." *Taylor v. General Motors Corp.*, 826 F.2d 452 (6th Cir.1987); *Adcock v. Firestone Tire & Rubber Co.*, 822 F.2d 623 (6th Cir.1987); *Varhola v. Cyclops Corp.*, 820 F.2d 809 (6th Cir.1987); *Roberson v. General Motors Corp.*, 801 F.2d 176 (6th Cir.1986); *Cook v. Pension Plan for Salaried Employees of Cyclops Corp.*, 801 F.2d 865 (6th Cir.1986); *Blakeman v. Mead Containers*, 779 F.2d 1146, 1149 (6th Cir.1985); *Norman v. United Mine Workers of Am. Health & Retirement Funds*, 755 F.2d 509 (6th Cir.1985); *Moore v. Reynolds Metals Co. Retirement Program*, 740 F.2d 454 (6th Cir.1984), *cert. den.*, 469 U.S. 1109, 105 S.Ct. 786, 83 L.Ed.2d 780 (1985); *Rhoton v. Central States, Southeast and Southwest Areas Pension Fund*, 717 F.2d 988 (6th Cir.1983); *VanGuten v. Central States, Southeast and Southwest Areas Pension Fund*, 672 F.2d 586 (6th Cir.1982).

Describing the "arbitrary and capricious" standard of review, the Supreme Court stated in *Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.:*

> Under the "arbitrary and capricious" standard the scope of review is a *narrow* one. A reviewing court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment ... Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a *narrow* one. The court is not empowered to substitute its judgment for that of the agency." (citation omitted)

419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974).

In articulating and applying the arbitrary and capricious standard, federal courts have emphasized the extremely narrow nature of this form of judicial review. In *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir.1985), the court stated:

> Although it is an overstatement to say that a decision is not arbitrary or capricious whenever a court can review the reasons stated for the decision without a loud guffaw, it is not much of an overstatement. The arbitrary or capricious standard is the least demanding form of judicial review of administrative action. Any questions of judgment are left to the agency, or here to the administrator of the Plan. (citations omitted)

■ Under the arbitrary and capricious standard, "the fact that the fiduciary's interpretation is not the correct one as determined by [the] court does not establish in itself arbitrary and capricious action ..." *Dennard v. Richards Group, Inc.*, 681 F.2d 306, 314 (5th Cir.1982). Rather, the decision of the plan administrator must

only be supported by "substantial evidence," *Wardle v. Central States Pension Fund,* 627 F.2d 820 (7th Cir.1980), *cert. den.* 447 U.S. 1112, 101 S.Ct. 922, 66 L.Ed. 2d 841 (1981), and it is the responsibility of the claim administrator, not the court, "to choose between various reasonable alternatives." *Jestings v. New England Tel. and Tel. Co.,* 757 F.2d 8, 10–11 (1st Cir.1985), *quoting Ponce v. Construction Laborers Pension Trust,* 628 F.2d 537, 542 (9th Cir. 1980).

■ In evaluating the administrator's decision to terminate benefits, this court is thus limited to a review of the evidence before the administrator *at the time of the complained of decision,* and may not conduct a *de novo* factual hearing of the claimant's eligibility for benefits. *Berry v. Ciba–Geigy Corp.,* 761 F.2d 1003, 1007–08 (4th Cir.1985); *Wardle v. Central States Pension Fund, supra,* 627 F.2d 820 at 824; *Phillips v. Kennedy,* 542 F.2d 52 (8th Cir. 1976). *Strader v. Central States Health and Welfare Fund,* 8 E.B.C. 1861 (W.D.Mo. May 4, 1987) [available on WESTLAW, 1987 WL 45087]; *Springer v. Allis–Chalmers Corp.,* 8 E.B.C. 1385 (C.D.Ill.1987) [available on WESTLAW, 1988 WL 19243]. In sum, this court is limited to review of the decision made by the claim administrator, based upon the information before him or her at the time of the decision, and may not substitute its judgment for that of the claim administrator when considering the correctness of a decision that has a rational basis in fact.

### Present Action

Plaintiff argues that summary judgment is not appropriate because numerous questions of fact exist which preclude summary disposition. These questions of fact include:

1. Defendant's averment that the examinations of plaintiff performed by Dr. Larsen and Dr. Obianwu were performed at the request of GM and not Metropolitan and are not therefore binding.

2. Whether the finding of the Worker's Comp. Board that plaintiff was disabled is binding on defendant.

3. Plaintiff's claim that she was unable to perform the work offered to her by GM and that GM failed to take a previous injury to her right wrist into consideration.

4. Plaintiff claims a previous disability in her right hand and her present disability with her left hand leaves her unable to perform work with either hand.

5. Plaintiff claims that Metropolitan made very little effort to verify the information given to it from GM.

Plaintiff does not dispute that her examination by Dr. Crain was at Metropolitan's designation nor that it is binding upon her.

■ After careful review of the pleadings and full argument by counsel, this court holds that plaintiff has failed to establish that defendant's denial of her EDB claim was arbitrary and capricious. Although plaintiff has raised minor factual issues, these issues are not material nor do they establish that defendant's decision was not supported by substantial evidence. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is granted.