Dennis C. SPRAY, Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA, individually and successor and assignor of Union Mutual Stock Life Insurance Company of America, Defendant.

No. G87–463–CA5.

United States District Court,
W.D. Michigan, S.D.

Jan. 10, 1989.

Bernard F. Finn, Sinas, Dramis, Brake, Boughton McIntyre and Reisig, P.C., Lansing, Mich., for plaintiff.

J. Michael Smith, Miller, Johnson, Snell and Cummiskey, Grand Rapids, Mich., for defendant.

## OPINION

ROBERT HOLMES BELL, District Judge.

Before this Court are the parties' cross motions for summary judgment on plaintiff's claim for increased benefits under a group disability insurance policy alleging that defendant insurer improperly reduced benefits payable under a policy provision coordinating disability and social security benefits.

## I. BACKGROUND

Plaintiff, Dennis C. Spray, (Spray) is a Michigan resident and worked as a sales representative for Hauschild, Inc. (Hauschild), which is a distributor for Richards Manufacturing Company of Memphis, Tennessee (Richards). Richards is a manufacturer of orthopaedic supplies. Hauschild's distributor agreement with Richards gave Hauschild certain exclusive rights to sell Richards' products within certain territories in Michigan. Hauschild received a straight commission of all of its sales of Richards' product. The agreement also entitled Hauschild's sales representatives to participate in a group insurance plan through Richards.

Spray was eligible for participation in the group disability plan under an "Addendum to the Long Term Disability group Insurance Application for Richards Manufacturing Co., Inc." which provides eligibility for:

> All persons under full-time employment contracts, whether in written form or not, with Richards Manufacturing Company, Inc. and its subsidiaries, as either agents or independent contractors and their agents including Officers, Managers, Supervisors, . . . Sales Persons, Sales Representatives, . . . .

> Eligibility is contingent upon an employee exclusively representing Richards Manufacturing Company, Inc. and its subsidiaries.

Plaintiff began working for Hauschild on November 1, 1972. Under his employment relationship with Hauschild, Spray set his own hours and was not directly supervised. Spray was also free to sell products of other companies. Spray received a straight commission from Richards through Hauschild on all Richards' products that he sold. Spray paid his own withholding and social security taxes.

As a sales representative for Hauschild handling Richards' product lines, Spray was able to participate in the group disability insurance policy that Richards provided for its own employees and other affiliated sales representatives. However, Spray paid the full cost of his disability insurance. Hauschild's commission checks from Richards reflected a deduction in the amount of the premiums for Spray's disability insurance. Spray's commission checks from Hauschild reflected a similar deduction from the total commission that Spray earned from selling Richards' products.

Spray ceased working after he suffered a stroke on May 8, 1980. He applied for benefits under the disability policy in July,

1980. Spray became eligible for benefits on August 8, 1980. He received benefits under the disability provisions until January 1981 when he returned to work. From January 1981 to January 1982, Spray received benefits under the rehabilitation provisions of the policy. In February 1982 Spray ceased representing Richards and requested benefits under the disability provisions of the policy. During this time Spray also applied for and was denied social security benefits. Spray informed UNUM of his denial of social security benefits. In response UNUM indicated that it would not offset, at that time, his benefits under the policy by any estimated potential social security disability benefits. However, UNUM did inform Spray that he would have to indemnify UNUM for any social security benefits that he might receive in accord with the coordination of benefits provision of the policy. Spray signed an acknowledgement of the policy's coordination of benefits and UNUM's right to indemnification. UNUM asserted its rights to offset under Amendment No. 2, § 8, B, which provides:

> Social Security Integration: the monthly benefit will be reduced by the amount of disability or retirement benefits under the United States Social Security Act ... as follows:
>
> (1) disability benefits for which the insured employee is eligible.

In early 1982 Hauschild dismissed Spray. Spray filed a workers compensation claim against Richards. The "Petition for Hearing," signed by Spray, lists Richards as his employer. In September 1982 Spray filed an "Amended Petition" identifying Hauschild as an additional employer. In June 1983 Spray filed a wrongful discharge and handicap discrimination complaint against Richards and Hauschild alleging that he was hired by Richards and worked for Richards "as an employee" from November 1, 1972, until January 28, 1982. In May 1984 Spray signed an "Agreement to Redeem Liability" settling his workers compensation claim. At the same time Spray also signed a resignation agreement with Richards and Hauschild.

On March 24, 1983, the Department of Health and Human Services determined that Spray was disabled as of May 1980 for purposes of eligibility for benefits under the Social Security Act. Spray was awarded monthly disability payments of $564 and a lump sum for unpaid back benefits. Upon notification of the determination and award, UNUM coordinated its disability benefits payable with the awarded social security benefits and reduced its total benefits payable to Spray by $564. Also, UNUM further reduced its monthly benefits payable to Spray by another $100 to recover $13,517.46, which UNUM calculated that it overpaid to Spray pending the social security administration's determination of Spray's disability and eligibility for benefits.

## II. ANALYSIS

### A. ERISA PREEMPTION

■ The long term group disability plan which Richards, as an employer, provided to its employees and other affiliated agents is an ERISA employee benefit plan (EBP) under ERISA § 3(1), 29 U.S.C. § 1002(1). *Nolan v. Aetna Life Ins. Co.*, 588 F.Supp. 1375 (E.D.Mich.1984). The exclusive remedy for plan benefits is under the civil enforcement provisions of ERISA § 502(a), 29 U.S.C. § 1132. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Generally, ERISA supersedes any state law regulating an ERISA employee benefit plan, § 1144(a). However, in order to preserve the effective administration and regulation of state based insurance schemes, ERISA contains "savings" and "deemer" clauses, 29 U.S.C. § 1144(b)(2)(A). The "savings" clause provides that ERISA shall not relieve anyone from the effect of state regulation of insurance. However, the "deemer" clause provides that an ERISA plan is not to be considered insurance for purposes of state insurance regulation. Thus, while an ERISA EBP, itself, is not bound by state insurance laws, any insurance service or product offered to its participants must comply with applicable state insurance laws.

Spray contends that the civil enforcement section of ERISA controls employee claims for benefits under an ERISA EBP that are for *improper administration* of the plan and not claims alleging *substantive defects* in the terms of an ERISA plan under state law. However, to distinguish between claims for improper administration and claims challenging the substantive terms of an EBP, Spray relies on cases that are essentially *declaratory actions* brought by non-beneficiary insurers to interpret state insurance law. *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); *Northern Group Services, Inc. v. Auto–Owners Ins. Co.*, 833 F.2d 85 (6th Cir.1987); and *Physicians Health Plan, Inc. v. Citizens Ins. Co. of America*, 673 F.Supp. 903 (W.D.Mich.1987). Although Spray's claim for benefits implicate matters of state insurance law, Spray is still fundamentally a beneficiary seeking benefits under an ERISA EBP. As such, Spray's claims relate to the *administration* of an ERISA EBP, albeit, allegedly in violation of substantive provisions of state insurance law. Even though ERISA, by operation of the "savings clause," does not preempt the substantive provisions of state insurance law, ERISA does preempt a beneficiary's claim for benefits under an ERISA EBP. Accordingly, Spray's proper and exclusive remedy is under ERISA's civil enforcement section and his state law claims are preempted by ERISA § 514, 29 U.S.C. § 1144.

Moreover, even if Spray were to amend his complaint to properly state his claim under ERISA, § 502, and allege that he is entitled to increased benefits because administration of the EBP involves certain policy terms that violate substantive provisions of state insurance law, his action would still fail.

## B. NON VIABILITY OF PLAINTIFF'S STATE LAW CLAIMS

Spray contends that either Michigan or Tennessee state insurance law controls his claims.

### 1. MICHIGAN LAW

Spray contends that at the time that he became eligible for disability benefits, Michigan law prohibited coordination of *group* as well as *individual* disability insurance benefits with other known insurance, such as workers compensation or social security. *Bill v. Northwestern National Life Insurance Co.*, 143 Mich.App. 766, 373 N.W.2d 214 (1985).

After Spray became eligible for disability benefits and after he filed this suit, the state legislature passed P.A. 52 of 1987, *amending* M.C.L. § 500.2236, to correct the "misconstruction of the insurance code" by the court in *Bill* and allow the Insurance Commissioner, by administrative order, to exempt group insurance policies from certain document filing requirements and to permit coordination of group disability insurance and social security benefits.

Moreover, P.A. 52 of 1987 was specifically retroactive by its terms to January 1, 1957. However, under *Karl v. Bryant Air Conditioning Co.*, 416 Mich. 558, 331 N.W.2d 456 (1982), retrospective application of a law is improper where it would impair vested rights acquired under existing laws. Nevertheless, P.A. 52 of 1987, was *curative* to correct a judicial misconstruction. Thus, insofar as Spray depends upon *Bill* for the vesting of his rights, such rights were based on a misconstruction of M.C.L. § 500.2236 that, properly construed, actually could permit coordination of group policy and social security benefits. Since the insurance policy provided for coordination of disability and social security benefits, Spray was only entitled to the coordinated and reduced amount at any time. *Romein v. General Motors Corporation*, 168 Mich.App. 444, 425 N.W.2d 174 (1988).

Spray further argues that the policy's coordination of benefits provision is invalid because it was not approved for use in Michigan by the insurance commissioner. The disputed COB provision was an amendment to the policy and was not filed with the state Commissioner of Insurance. Spray argues that since the COB provision was not approved it violates the provision requiring approval of all forms by the Com-

missioner of Insurance and is, therefore, invalid. M.C.L. § 500.2236. Also, Spray contends that M.C.L. §§ 500.3438, .3440, and .3444 prohibit coordination of disability and social security benefits.

Further, anticipating possible filing and approval exemptions for group policies, Spray asserts that he was a sales representative for Richards in his capacity as an independent contractor and not as an ordinary employee. He then argues that, as to him, the group disability policy must be considered as a non-group policy subject to all filing and approval requirements under M.C.L. § 500.2236. Michigan law provides that if a policy provision violates a code provision, the policy is valid, but the violative provisions are interpreted in accord with applicable code terms in a manner not less favorable to the insured. § 500.3430.

■ Michigan law does permit coordination of group disability insurance and social security benefits. Under P.A. 52 of 1987, *amending* M.C.L. § 500.2236, the Commissioner of Insurance may exempt certain policies (including group disability insurance policies, M.C.L. § 500.3606) from the filing and approval requirements by any order exempting certain policies from filing on or after September 1, 1968. On September 1, 1968, the Commissioner of Insurance issued an order exempting group accident and health insurance, including group disability insurance, from filing and approval requirements. *See Bill*, 143 Mich.App. at 769–770, 373 N.W.2d 214. Thus, under Michigan law, if the policy is a group policy, its COB provisions are legally permissible. Further, if the policy is a group policy, the filing and approval requirements applicable to individual policies do not apply.

■ Even though Spray characterizes himself as an independent contractor for purposes of his employment relationship with Richards, the policy itself is nevertheless properly characterized as a group policy. The insurer sold the policy to Richards as a benefit for its employees and other affiliated workers. The terms of the policy itself considered independent contractors as employees, "[a]ll persons under full-time employment contracts ... as either agents or independent contractors and their agents," for purposes of participation in the policy. Spray merely participated in the policy as provided by Richards. Further, the COB existed as an amendment to the policy before Spray was disabled. If Spray had wanted individual non-coordinated coverage, he was free to purchase it. Rather, Spray chose to participate in a policy that Richards offered to its employees, affiliated workers, and independent contractors, *who exclusively represented Richards*. Moreover, Spray's status as an independent contractor is belied by the policy's requirement that independent contractors could participate in the group insurance policy only if they *exclusively represented Richards*. These factors identify the plan as a group plan and characterize Spray as an employee for purposes of participation.

Spray's approach requires a dual characterization of the policy, an individual policy as to Spray, a group policy as to all others. This approach, in effect, produces a hybrid policy that offers a group rate to Spray, but without the COB benefit reduction. The insurer collects a lower premium and pays a higher benefit, merely because Spray sold Richards' products as an independent contractor, rather than as a full-time employee. However, for purposes of participation in the EBP, Spray was the functional equivalent of Richards' other full time employees. For this reason Spray should be subject to the coordinated benefit provision.

Under Michigan law, therefore, if it applies to the policy, Spray's benefits are properly coordinated with his social security benefits, in accord with the terms of the policy.

■ However, Michigan law does not properly apply to the policy. The Michigan Insurance Code, M.C.L. § 500.120, requires all transactions of insurance business in Michigan to comply with Michigan law. Further, M.C.L. § 500.402a defines transactions of insurance business as the collection of premiums and the issuance of contracts of insurance to state residents as doing business in Michigan. However, M.C.L.

§ 500.402b provides that transactions of *group* insurance, where the master policy was validly issued and delivered in another state or the insurance was procured through negotiations occurring entirely outside of Michigan do not constitute "transactions of insurance" for purposes of applying Michigan law. *New England Mutual Life Insurance Co. v. Gray*, 786 F.2d 406 (6th Cir.1986). In the present case, Spray's premiums were deducted by Richards from the commission checks it paid to Hauschild, Inc. Moreover, the terms of the policy were negotiated between the insurer, a New York corporation, and Richards, a Tennessee corporation. The insurer sold and delivered the policy to Richards, not to Spray. Richards Manufacturing, as the policy holder, clearly provided the insurance policy as a group insurance policy for the benefit of its employees and agents. Moreover, the disability insurance policy provided that Tennessee law applied. Spray was allowed to participate in the plan and its group rates because he was a sales representative for Richards products. Thus, Michigan law does not properly apply to this insurance policy. But, again, if it did, the coordination of benefits term of this *group* insurance policy complies with the appropriate requirements of Michigan law.

## 2. TENNESSEE LAW

Relevant Tennessee insurance law is both similar and different from Michigan law. For example, both Michigan and Tennessee law prohibit coordination of individual disability insurance benefits with known or statutorily required disability benefits, such as social security. M.C.L. § 500.3440, T.C.A. § 56–26–109(5). Tennessee and Michigan law differ, however, in that Tennessee law statutorily defines group accident and health insurance as "insurance covering groups of persons *as defined in the policy* ... under a policy issued to an employer ... employing employees of such employer...." T.C.A. § 56–26–201(b) (emphasis supplied). Further, § 201(a) defines employee fairly broadly, although it does not specifically list independent contractors. However,

neither does it exclude or prohibit independent contractors from being employees *as defined in the policy*. The disputed insurance policy was issued to Richards Manufacturing and was open to "[a]ll persons under full-time employment contracts ... as either agents or independent contractors and their agents...." The broad scope of eligible participants, including independent contractors, *as defined in the policy*, complies with T.C.A. § 56–26–201(b), although it exceeds the specific catalogue of employees under T.C.A. § 56–26–201(a).

With respect to Tennessee law Spray again argues that as a manufacturer's sales representative he was an independent contractor and not an employee for purposes of his participation in the disability insurance. Spray argues that under Tennessee law the policy is not a statutorily competent group insurance plan. He further contends that under Tennessee law, if a policy term violates a code provision, the policy remains valid, but the violative terms are interpreted in accord with applicable code terms and in a manner not less favorable to the insured.

■ As analyzed and recognized upon above, the policy possesses sufficient indicia that readily characterize it as a group policy. Moreover, Spray's status as an independent contractor is belied by his participation in a group disability insurance plan which was limited to persons under full-time contracts with Richards who exclusively represent Richards Manufacturing Company, Inc. and its subsidiaries. Despite Spray's attempts to style himself as an independent contractor, for purposes of the Tennessee statute, he is the functional equivalent of a regular full-time employee and his group disability benefits are properly coordinated in accord with the terms of the policy.

■ Additionally, Spray characterized himself as an "employee" of Richards for purposes of worker's compensation benefits on March 18, 1982, in a wrongful discharge suit on June 4, 1983, and in an "Agreement to Redeem Liability" on May 1, 1984. Under *Smith v. Montgomery*

*Ward & Co.*, 388 F.2d 291 (6th Cir.1968), Spray is reasonably estopped from recharacterizing his employment status with Richards to accomodate his present litigating posture. This is so, even though an MESC Determination of Employment Status in 1982 held that Spray was not "in employment" for purposes of not characterizing his remuneration as wages. Spray is properly considered an employee for purposes of the group disability policy and T.C.A. § 56–26–201(a) & (b).

 Furthermore, UNUM properly adjusted Spray's monthly benefit by a reduction of $100 to coordinate Spray's benefits under the policy with the retroactive award of social security disability benefits to Spray. Amendment No. 2 to the UNUM policy, effective January 1, 1979, clearly provides:

> Social Security Integration: the monthly benefit will be reduced by the amount of disability or retirement benefits under the United States Social Security Act ... as follows:
>> (1) disability benefits for which the insured employee is eligible.

Spray's argument that the phrase, "will be reduced," is ineffective to contractually permit UNUM to integrate its benefits with a retroactive award is strained and not convincing. Further, Spray's reliance on *Bush v. Metropolitan Life Insurance Co.*, 656 F.2d 231 (6th Cir.1981) is unfounded. In *Bush* the court determined that the policy was ambiguous as to integrating policy benefits with retroactive social security awards. No ambiguity exists here as to UNUM's right to integrate its benefits payable with social security disability benefits. Also, *Bush* was decided under Michigan law, which does not apply to the facts of the present case, and also did not involve an ERISA claim. In *Bush* the court applied Michigan's *contra proferentem* rule of construction to find against the defendant insurer on the ambiguity in the policy. However, for ERISA plans the rules of construction are different. A plan fiduciary's reasonable and good faith interpretation of plan documents, even if ambiguous, will not be judicially disturbed unless it is

arbitrary and capricious. *Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974); *Taylor v. General Motors Corp.*, 826 F.2d 452 (6th Cir.1987); *Brandon v. Metropolitan Life Ins. Co.*, 678 F.Supp. 650 (E.D.Mich.1988).

### III. CONCLUSION

Since Spray is seeking benefits under an ERISA employee benefit plan, his claims should have been pleaded under the civil enforcement provisions of ERISA, § 502(a), which properly preempt Spray's state law claims. However, this Court determines that even if the claims were pleaded under § 502(a), Spray's claims would fail because the group disability insurance policy does not violate the law of either Michigan or Tennessee and Spray is properly considered an employee for purposes of participation in the group insurance under Tennessee law, T.C.A. § 56–26–201.

Accordingly, defendant's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied.